IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-cr-30038 |
| ) | |
| JAMES J. THOMPSON, ) | |
| ) | |
| Defendant. ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant James J. Thompson's Amended Motion for Modification of Sentence (d/e 36) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

On April 21, 2017, Defendant pleaded guilty to one count of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  On September 25, 2017, the undersigned District Judge sentenced Defendant to 240 months' imprisonment and 10 years of supervised release.  Judgment, d/e 28.  Defendant is currently serving his sentence at FCI Victorville Medium I and

has a projected release date of June 30, 2033.  See Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed November 23, 2020).

On November 6, 2020, Defendant filed a pro se motion for compassionate release (d/e 34) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On November 12, 2020, after appointment of the Federal Public Defender, Defendant filed the Amended Motion for Modification of Sentence (d/e 36) now before the Court.  Defendant requests compassionate release due to his health issues and the COVID-19 pandemic.  Defendant is 50 years old and suffers from obesity and Type II diabetes.  Am. Mot. Modification of Sentence 3-5.  The Amended Motion also states that Defendant self-reports suffering from hypertension.  Id. at 6.

If released, Defendant proposes to live with his uncle in Taholah, Washington, either in his uncle's home or in a rental home owned by his uncle. Id. at 14.  The United States Probation Office addressed Defendant's request for compassionate release in a Memorandum (d/e 38).  According to Probation's Memorandum, Defendant previously provided his uncle's address to the Bureau of Prisons (BOP) as part of a release plan, but BOP did not approve the

residence as it is on the Quinault Indian Nation reservation. Id. at 1-2. For that reason, Probation concludes that Defendant does not have an appropriate release address at this time. Id. at 2.

On November 16, 2020, the Government filed a Response Opposing Defendant's Motion for Compassionate Release (d/e 37). The Government argues that the Court should deny Defendant's compassionate release motion given Defendant's criminal history and because Defendant does not meet the requirements for compassionate release. Resp. 12. The Government also notes that the Bureau of Prisons (BOP) has implemented procedures designed to curb the spread of the virus in its facilities. Id. at 3-10.

As of November 23, 2020, BOP reports that FCI Victorville Medium I has ten active confirmed inmate cases of COVID-19 and seven active confirmed staff member cases of COVID-19. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed November 23, 2020).

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See

18 U.S.C. § 3582(c).  However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does

not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Defendant submitted a request for compassionate release to the warden of his facility on October 20, 2020. Resp. 3. Although the status of that request is unknown, more than thirty days have lapsed since the submission of the request, so exhaustion of administrative remedies is not an issue in this case.

Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that Defendant has not established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment.

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social

distancing and isolation. Social distancing can be difficult for individuals living or working in a prison. Further, Defendant has been diagnosed with underlying medical conditions that may increase the serious risks that COVID-19 presents for Defendant.[1]

Defendant has been diagnosed with Type II diabetes, which the CDC's current guidance indicates increases the risks of severe illness from COVID-19.[2] Defendant also reports a body mass index of 30, which qualifies as obese, although a BMI of 30 is just on the cusp of obesity. According to the CDC's current guidance, persons who are obese are at increased risk of serious illness from COVID-19.[3] While Defendant's Amended Motion states that Defendant self-reports suffering from hypertension, the BOP medical records provided (d/e 38-1) do not reflect a diagnosis of hypertension.

---

1 See Coronavirus Disease 2019 (COVID-19), People at Increased Risk, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last accessed November 23, 2020).
2 https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#diabetes (last accessed November 23, 2020).
3 https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity (last accessed November 23, 2020).

The Court recognizes that there are currently several confirmed cases of COVID-19 at FCI Victorville Medium I, the facility where Defendant is housed.  BOP also reports that at FCI Victorville Medium I there are 343 inmates who were previously diagnosed with COVID-19 who have recovered.  See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed November 23, 2020).  According to the BOP medical records, Defendant is among the recovered.  The medical records reflect that Defendant was tested on July 21, 2020, as part of BOP's COVID-19 surveillance efforts, although he was asymptomatic at the time.  See BOP Medical Records 30.  After the test returned a positive result, Defendant was prescribed acetaminophen and screened for COVID-19 symptoms every day for the next two weeks. Id. at 30, 44-45.  In each of the daily screenings, Defendant denied having a cough, shortness of breath, muscle pain, fatigue, sore throat, congestion, loss of taste or smell, chills, headache, nausea, vomiting, and diarrhea.  Id. at 44-45.  The daily screening also show that Defendant did not have a fever at any point.  Id.  Defendant appears to have remained completely asymptomatic for the duration of the illness.

Further, Defendant has more than twelve years remaining on his sentence, assuming he receives full good time credit. Defendant's criminal history includes prior convictions for Misprision of Felony and Possession of Marijuana with Intent to Distribute. PSR ¶¶ 44, 47. The Court does note, however, that Defendant has not been disciplined while in BOP custody. Probation's Mem. 1.

Finally, Defendant has not proposed an adequate release plan. The Bureau of Prisons has previously determined that Defendant's proposed residence upon release is not acceptable and the Probation Office likewise concluded that Defendant does not have an appropriate release address.

The Court, taking all the relevant facts into account, finds that Defendant has not established that there exist extraordinary and compelling reasons that warrant a reduction in his term of imprisonment.

### III. CONCLUSION

For the reasons set forth above, Defendant James J. Thompson's Amended Motion for Modification of Sentence (d/e 36) and Defendant's pro se Motion for Compassionate Release (d/e 34)

are DENIED.

ENTER:  November 23, 2020

                                                */s/ Sue E. Myerscough*
                                                SUE E. MYERSCOUGH
                                                UNITED STATES DISTRICT JUDGE